1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

7

8   STEPHEN CHOHRACH, et al.,                )   1:10cv02029 DLB
                                             )
9                       Plaintiffs,          )   ORDER GRANTING MOTION
                                             )   FOR SUMMARY JUDGMENT
10          v.                               )
                                             )   (Document 34)
11   BANK OF AMERICA, N.A., et al,           )
                                             )
12                                           )
                        Defendants.          )
13                                           )

14

15          On April 16, 2012, Defendants Bank of America, N.A., and BAC Home Loans Servicing,

16   Inc., filed this motion for summary judgment.  The matter was heard on June 1, 2012, before the

     Honorable Dennis L. Beck, United States Magistrate Judge.[1]  Andrew Noble appeared on behalf
17
     of Bank of America, N.A., and BAC Home Loans Servicing, Inc..  John Sargetis appeared on
18
     behalf of Plaintiffs Stephen Chohrach and Donna Chohrach ("Plaintiffs").
19
                                         **BACKGROUND**
20
            Plaintiffs filed this action in Stanislaus County Superior Court on September 21, 2010,
21
     against Defendants Bank of America, N.A., BAC Home Loans Servicing, Inc., and C&M
22
     McGee, Inc.  On October 29, 2010, Defendants Bank of America, N.A. ("BofA"), and BAC
23
     Home Loans Servicing, Inc. ("BAC"), removed the action on the basis of federal question
24
     jurisdiction.  The action concerns a $908,000 mortgage loan made by BofA to Plaintiffs in
25
     December 2006.  Plaintiffs allege causes of action under the Real Estate Settlement Procedure
26
     Act ("REPSA"), the Truth In Lending Act ("TILA") and California law.
27

28
     ───────────────
            [1] The parties consented to the jurisdiction of the United States Magistrate Judge for all purposes.

                                                1

1    On April 16, 2012, BofA and BAC (collectively "Defendants") filed this motion for

2  summary judgment.  Plaintiffs opposed the motion on May 5, 2012, and Defendants filed their

3  reply on May 18, 2012.

4    The pre-trial and trial dates have been vacated.

5                                **UNDISPUTED FACTS**

6    On November 8, 2006, Plaintiffs' mortgage broker, Timothy Darcey, submitted an

7  application to BofA on Plaintiffs' behalf.   Deposition of Timothy Darcey ("Darcey Dep."),

8  178:15-180:16; Declaration of Andrew Noble ("Noble Dec."), Exh. 10.  The loan application

9  stated that the loan was a refinance in the amount of $908,000.  The application also listed the

10  "loan plan" as "NET 5 INTEREST ONLY ARM - NEP."  The maturity term was 360 months,

11  with an amortized term of 300 months.  Noble Dec., Exh. 10.

12    BofA approved the loan on November 30, 2006.  The approval describes the "loan type"

13  as "NET 5 NO HLV NO CONV NON CONF," in the amount of $908,000.  The loan was a

14  refinance with a term of 360 years.  The approval letter was faxed to Mr. Darcey.  Darcey Dep.,

15  180:18-182:21; Noble Dec., Exh. 1.

16    BofA drafted loan documents for a 30 year loan of $908,000.  The final loan terms

17  offered to Plaintiffs include a 5 year 6.5% fixed rate that began adjusting once every year in

18  2012.  Plaintiffs are not required to repay principal for the first 10 years and there is no

19  prepayment penalty.  Darcey Dep. 185:8-23; Noble Dec., Exh. D and E.

20    BofA sent the loan documents to an escrow agent that was selected by Plaintiffs' broker

21  to close the loan.  Darcey Dep., 185:24-186:11.

22    Plaintiffs executed the Adjustable Rate Note and Deed of Trust at closing on December 2,

23  2006.  Noble Dec., Exh. D and E; Deposition of Stephen Chohrach ("S. Chohrach Dep."), 79:16-

24  80:1.  Plaintiffs received copies of the Note and Deed of Trust at Closing.  Chohrach Dep.,

25  90:10-25, 91:17-92:24.

26    Approximately a day or two after closing, Mr. Chohrach went through the documents

27  Plaintiffs received and discovered that the loan was not the 30 year fixed rate that they believed

28  they had obtained.  S. Chohrach Dep., 96:20-97:25; Declaration of Donna Chohrach ("D.

1  Chohrach Dec.,") ¶¶ 3-4.  Mr. Chohrach saw the interest only term and contacted Mr. Darcey.  S.

2  Chohrach Dep., 96:20-97:25; D. Chohrach Dec., ¶ 4.  Until that time, Plaintiffs believed they had

3  signed a 30 year fixed interest rate loan.  S. Chohrach Dep., 78:1-9.

4        Plaintiffs received and signed two copies of the Notice of Right to Cancel on December

5  6, 2006.  The deadline to cancel was listed as December 9, 2006.  Deposition of Donna Chohrach

6  ("D. Chohrach Dep."), 109:1-110:18; Noble Dec., Exh. F and J.

7        Plaintiffs decided not to cancel the loan transaction.  D. Chohrach Dep., 82:19-84:7

8        This action was filed on September 21, 2010.

9                                    **LEGAL STANDARD**

10       Summary judgment is appropriate when no genuine issue of material fact exists and the

11  moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317

12  (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the

13  court those portions of the material on file that it believes demonstrates the absence of any

14  genuine issues of material fact," the burden of production shifts and "the non moving party must

15  set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a

16  genuine issue for trial.'"  T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

17  626, 630 (9th Cir. 1987)(quoting Fed.R.Civ.P. 56(e)).  As to the specific facts offered by the

18  nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the

19  light most favorable to the nonmoving party.  Id. at 630-31.

20       If the moving party meets its initial responsibility, the burden then shifts to the opposing

21  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

22  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

23       In attempting to establish the existence of this factual dispute, the opposing party may not

24  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

25  form of affidavits, and/or admissible discovery material, in support of its contention that the

26  dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

27  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

28  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

1   Elec. Serv., 809 F.2d at 630, and that the dispute is genuine, i.e., the evidence is such that a

2   reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc.,

3   818 F.2d 1433, 1436 (9th Cir. 1987).

4          In the endeavor to establish the existence of a factual dispute, the opposing party need not

5   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

8   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

9   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

10  amendments).

11         In resolving the summary judgment motion, the court examines the pleadings,

12  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

13  any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

14  255, and all reasonable inferences that may be drawn from the facts placed before the court must

15  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

16  Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out

17  of the air, and it is the opposing party's obligation to produce a factual predicate from which the

18  inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

19  Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

20         Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

21  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

22  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

23  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

24                                        **DISCUSSION**

25  A.      RESPA and TILA Claims

26         Plaintiffs do not oppose dismissal of their federal causes of action under TILA (Sixth

27  Cause of Action) and RESPA (Seventh Cause of Action).  The dismissal of these claims,

28  however, eliminates the basis under which this action was removed.  Nevertheless, the parties do

1   not request that the action be remanded and in light of the length of time this case has been

2   proceeding in this Court, the Court exercises its discretion to retain jurisdiction.  Harrell v. 20th

3   Century Ins. Co., 934 F.2d 203, 205 (9th Cir.1991) ("It is generally within a district court's

4   discretion to retain jurisdiction to adjudicate the pendent state claims or remand them to state

5   court.").

6   B.      Fraud

7           Plaintiffs' First and Second Causes of Action are based on the alleged fraudulent actions

8   of Defendants.  Plaintiffs do not oppose dismissal of the Second Cause of Action for

9   Constructive Fraud and the Court will therefore address only the actual fraud allegations.

10          Plaintiffs' fraud claim alleges that (1) Mr. Darcey falsely stated that they were receiving a

11  30 year fixed interest rate loan, would not need to pay much in closing costs to obtain the loan,

12  received a 5 year interest only loan, and that the loan was not much different from a 30 year

13  fixed;  (2) BofA falsely stated that the loan documents were standard forms, and that Plaintiffs

14  should sign the loan documents without reading the terms of the loan; and (3) the Lender/

15  "Alleged Note Holder" falsely misrepresented that it had the power to foreclose on the home.

16          1.      *Statute of Limitations*

17          Defendants first argue that the claim is time-barred by the three year statute of limitations.

18  Cal. Civ. Proc. § 338(d).  It is undisputed that Plaintiffs learned that the loan they had received

19  did not match their expectations a day or two after the December 2, 2006, closing.  Nor is it

20  disputed that Plaintiffs executed the Notice of Right to Cancel on December 6, 2006, and did not

21  cancel the loan within the three day time period.  Plaintiffs filed this action on September 21,

22  2010, almost four years later.

23          It is a well-established principle that the statute of limitations on a claim begins to run

24  when the plaintiff "at least suspects a factual basis, as opposed to a legal theory" of some

25  wrongdoing, and has "reason to suspect when he has notice or information of circumstances to

26  put a reasonable person on inquiry."  Norgart v. Upjohn Co., 21 Cal.4th 383, 397–98 (1999)

27  (internal citations and quotations omitted).  The burden is on a plaintiff seeking to avoid the

28  effect of the limitations bar to plead specific facts demonstrating: "(1) the time and manner of

1   discovery [of the facts underlying the claim] and (2) the inability to have made earlier discovery

2   despite reasonable diligence." E–Fab, Inc. v. Accountants, Inc. Servs., 153 Cal.App.4th 1308,

3   1324 (2007).

4        Under California law, one who signs a contract "cannot complain of unfamiliarity with

5   the language of the instrument." Madden v. Kaiser Foundation Hospitals, 17 Cal.3d 699, 710

6   (1976); Pac. State Bank v. Greene, 110 Cal.App.4th 375, 393 (2003).  A party must show he

7   reasonably relied on a contrary representation such that it excuses his failure to read the

8   document. Pac State Bank, 110 Cal.App.4th at 393.  Where the party was "in full possession of

9   all information relevant to the discovery [of the claim] ... on the day the loan papers were

10  signed," there is no basis for equitable tolling of the limitations period. Meyer v. Ameriquest

11  Mortg. Co., 342 F.3d 899, 902 (9th Cir.2003).

12       Based on the undisputed facts before the Court, Plaintiffs are not entitled to tolling of the

13  limitations period.  Just days after the December 2, 2006, signing of closing documents, Plaintiffs

14  discovered that the loan they received was not the loan they believed they had obtained.

15  Plaintiffs signed the Notice of Right to Cancel on December 6, 2006, but did not cancel by the

16  December 9, 2006, deadline.  Therefore, at the latest, the limitations period began to run a few

17  days after December 2, 2006, when they had notice of the potential wrongdoing.

18       Plaintiffs attempt to toll the limitations period by arguing that they reasonably relied on

19  various statements made by Mr. Darcey.  According to Plaintiffs, when they discovered the

20  potential problem, the contacted Mr. Darcey, who told them the loan they received was the same

21  as a 30 year fixed and that they could refinance at any time and/or convert the loan. D. Chohrach

22  Dec., ¶¶ 5-6.

23       At the hearing, Plaintiffs recognized that in order to attribute Mr. Darcey's statements to

24  Bank of America, they must demonstrate a conspiracy[2] between the two.  Other than citing

25  "communications" between Mr. Darcey and BofA, which would be expected in a loan

26

27       [2] Plaintiffs allege an independent cause of action for conspiracy.  However, conspiracy is not a separate case
28  of action under California law, but rather a theory of joint liability for an underlying tort.  See Applied Equip. Corp.
    v. Litton Saudi Arabia, Ltd., 7 Cal.4th 503 (1994).

1  transaction, Plaintiffs offer no evidence to support their theory.  Plaintiffs make general

2  allegations against the banking industry, but wholly fail to provide any facts specific to this

3  action to demonstrate a conspiracy.

4         Insofar as Plaintiffs suggest that there was a principal/agent relationship between Mr.

5  Darcey and BofA, the facts defy this argument.  While Mr. Darcey prepared the application, he

6  had to submit it to BofA for *independent* approval.  Darcey Dep., 180:18-182:21.  Plaintiffs offer

7  no evidence to suggest that Mr. Darcey could bind BofA to any loan agreement.  Indeed, a loan

8  broker is customarily the *borrower's* agent in negotiating a loan.  Wyatt v. Union Mortgage Co.,

9  24 Cal.3d 773, 782 (1983).  Plaintiff testified that they originally retained Mr. Darcey in 2005 to

10 obtain a construction loan from a *different* lender, and they cannot reasonably argue that he

11 became BofA's agent on the refinance.  D. Chohrach Dec., ¶ 3.

12        Accordingly, Plaintiffs are unable to demonstrate that they reasonably relied on any

13 statements made by BofA and the limitations period has expired on claims against BofA related

14 to the loan.

15                2.  *Elements of Claim*

16        "The elements of fraud, which give rise to the tort action for deceit, are (a)

17 misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity

18 (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

19 resulting damage."  Lazar v. Superior Ct., 12 Cal.4th 631, 638 (1996) (internal quotation marks

20 and citations omitted).

21        For reasons similar to those discussed above, Plaintiffs are unable to allege a fraud claim

22 against BofA.  To the extent that Plaintiffs attempt to attribute Mr. Darcey's statements about the

23 loan to BofA, Plaintiffs have provided no evidence of a conspiracy.  They have also failed to

24 provide evidence that Mr. Darcey was, in any way, acting on behalf of BofA.

25        The same is true for the alleged statements made by the escrow agent.  Plaintiffs have not

26 provided any evidence that the escrow agent was entitled to act on behalf of BofA.  In fact, Mr.

27 Darcey testified that he selected the title agent, a woman that he had worked with in the past, and

28

1    then communicated the choice to BofA.  Darcey Dep., 186:2-9.  Mr. Darcey further testified that

2    he was free to select any title agent.  Darcey Dep., 186:18-21.

3          Plaintiffs' fraud allegations against BofA also fail because Plaintiffs have not provided

4    evidence that the alleged statement made by a BofA representative that Plaintiffs could refinance

5    the loan later was false at the time it was made.  While refinancing may not have been available

6    at a later date, there is no evidence that BofA's statement was false at the time it was made.  At

7    the hearing, Plaintiffs argued that BofA had no reasonable basis to make the statement, but

8    whether the statement was reasonable does not change the requirement that the statement must be

9    false when made.

10         Whether Plaintiffs' reliance on the alleged statement was reasonable is also questionable.

11   It appears unreasonable to expect that the purported offer was a blanket promise to refinance

12   their loan at any time under any circumstance.

13         Finally, Plaintiffs are unable to allege fraud against BofA and BAC based on alleged

14   misrepresentations that they had the right and power to foreclose on the property.  Plaintiffs'

15   allegations relate to a July 19, 2010, Notice of Intent to Accelerate, though they are not entirely

16   clear.  Courts have rejected similar claims.  Sipe v. Countrywide Bank, 2010 WL 2773253, *14

17   (E.D.Cal. 2010) ("Plaintiff agreed to make monthly payments pursuant to the terms of the

18   promissory note and deed of trust when he obtained the loan from SPM.  Whether or not CWB is

19   legally entitled to service Plaintiff's loan does not harm Plaintiff in the absence of allegations that

20   Plaintiff was also making loan payments to a third party."); see also Lane v. Vitek Real Estate

21   Indus. Grp., 713 F.Supp.2d 1092, 1099 (E.D.Cal.2010) ("There is no stated requirement in

22   California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to

23   foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their

24   agents to initiate non-judicial foreclosure. Accordingly, the statute does not require a beneficial

25   interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale.").

26   Plaintiffs testified that they were never double-billed for their monthly loan payments, that the

27   loan is current and that there are no foreclosure proceedings in progress.  D. Chohrach Dep.,

28   58:19-59:6; S. Chohrach Dep., 102:19-20.

1    Defendants are therefore entitled to summary judgment on the fraud cause of action.

2  **C.**      <u>Negligence</u>

3    In the Fourth Cause of Action for negligence, Plaintiffs allege that Mr. Darcey and BofA

4  failed to consider the usual underwriting factors for assessing creditworthiness, deceived

5  Plaintiffs as to the true terms of the loan and did not work in Plaintiffs' best interest by

6  convincing them to sign the loan documents without reading the terms.  Complaint, ¶ 95.

7         1.      *Statute of Limitations*

8    In California, a negligence claim is subject to a two year statute of limitations.  Cal. Civ.

9  Proc. § 339(1).  Pursuant to the discussion above, all claims related to the loan are time-barred

10  and Plaintiffs are not entitled to tolling.

11         2.      *Elements of Claim*

12    The Court will not repeat the reasons, discussed above, as to why Plaintiffs are unable to

13  attribute statements made by Mr. Darcey or the escrow agent to BofA.  They apply equally to the

14  negligence claim.

15    Moreover, "absent special circumstances ... a loan transaction is at arm's length and there

16  is no fiduciary relationship between the borrower and lender."  <u>Perlas v. GMAC Mortg., LLC</u>,

17  187 Cal.App.4th 429, 436 (2010) (citations omitted).  "A lender is under no duty 'to determine

18  the borrower's ability to repay the loan.... The lender's efforts to determine the creditworthiness

19  and ability to repay by a borrower are for the lender's protection, not the borrower's.'"  <u>Id.</u>

20  (citations omitted).

21    Although Plaintiffs attempt to argue that BofA acted beyond the role of lender by

22  inducing them into a disadvantageous loan, their argument is nothing more then general

23  speculation.  Based on the undisputed material facts, Plaintiffs and Defendants engaged in a

24  standard mortgage loan transaction.  BofA owed no duty to Plaintiffs that would support a

25  negligence claim.

26    Defendants are entitled to summary judgment on the negligence claim.

27

28

1   D.      California Bus. & Prof. Code section 17200, et seq.

2          Plaintiffs allege that "Defendants' acts constitute unlawful, unfair and/or fraudulent

3   business practices."  Complaint, at ¶ 101.

4          California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or

5   fraudulent business act or practice."  An act can be alleged to violate any or all of the three

6   prongs.  Berryman v. Merit Prop. Mgmt, Inc., 152 Cal.App.4th 1544, 1554 (2007).

7          The Court agrees with Defendants that Plaintiffs have not established a violation under

8   any of the three prongs.  The Court has found that Plaintiffs cannot state a claim for fraud and

9   Plaintiffs have not cited any unlawful act.

10         To state a claim for "unfair" business practice in a consumer case, plaintiffs must allege

11  conduct that either violates a "legislatively declared policy" or is such that the "utility of the

12  conduct outweighs the gravity of the harm to the alleged victims."  Lozano v. AT&T Wireless

13  Serv. Inc., 504 F.3d 718, 733 (9th Cir. 2007).  Based on the undisputed facts, which demonstrate

14  that Plaintiffs knew that the terms of the loan they signed were not what they thought before they

15  signed the Notice of Right to Cancel, Plaintiffs cannot show unfair business practices.  Plaintiffs

16  signed an "Adjustable Rate Note" that stated they would pay interest only from February 1, 2007,

17  through February 1, 2017.  It further stated that the interest rate would be 6.5% until January 1,

18  2012, when may change yearly thereafter.  Exh. D.

19         There is simply no unlawful, unfair or fraudulent act in the facts of this action and

20  Defendants are entitled to summary judgment.

21  E.      Restitution and Rescission

22         The Eight Cause of Action alleges that Plaintiffs are entitled to restitution and rescission

23  of the loan and Deeds of Trust.  Complaint, ¶ 134.

24         Under California law, however, restitution and rescission are generally not independent

25  causes of action, but rather "general principle[s] underlying various legal doctrines and

26  remedies."  Donahue v. Apple, Inc., 2012 WL 1657119, *16 (N.D.Cal. 2012) (citing McBride v.

27  Boughton, 123 Cal.App.4th 379, 387 (Cal.Ct.App.2004); Soares v. ReconTrust Co., N.A., 2012

28  WL 1901234, *5 (N.D.Cal. 2012).

1

**CONCLUSION AND ORDER**

2        For the reasons discussed above, this Court:

3        1.        GRANTS the motion for summary judgment brought by Defendants Bank of

4                  America, N.A., and BAC Home Loans Servicing, Inc.; and

5        2.        DIRECTS the clerk to enter judgment in favor of Defendants Bank of America,

6                  N.A., and BAC Home Loans Servicing, Inc., and against Plaintiffs Stephen

7                  Chohrach and Donna Chohrach.[3]

8        IT IS SO ORDERED.

9        **Dated:**   **June 11, 2012**                        ___/s/ **Dennis L. Beck**___
                                                         UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[3] As there is an additional Defendant not addressed by this Order, the case will not be closed.

11