1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN CHOHRACH, et al., | ) 1:10cv02029 DLB |
| | ) |
| | ) |
| Plaintiffs, | ) ORDER GRANTING MOTION |
| | ) FOR SUMMARY JUDGMENT |
| v. | ) |
| | ) (Document 32) |
| BANK OF AMERICA, N.A., et al, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

On April 16, 2012, Defendant C&M McGee, Inc. filed this motion for summary judgment. The matter was heard on June 1, 2012, before the Honorable Dennis L. Beck, United States Magistrate Judge.[1] Thomas Nickens appeared on behalf of Defendant C&M McGee, Inc. John Sargetis appeared on behalf of Plaintiffs Stephen Chohrach and Donna Chohrach ("Plaintiffs").

## **BACKGROUND**

Plaintiffs filed this action in Stanislaus County Superior Court on September 21, 2010, against Defendants Bank of America, N.A., BAC Home Loans Servicing, Inc., and C&M McGee Inc. ("C&M"). On October 29, 2010, Defendants Bank of America, N.A. ("BofA"), and BAC Home Loans Servicing, Inc. ("BAC"), removed the action on the basis of federal question jurisdiction. The action concerns a $908,000 mortgage loan made by BofA to Plaintiffs in December 2006. Plaintiffs allege causes of action under the Real Estate Settlement Procedure Act ("REPSA"), the Truth In Lending Act ("TILA") and California law.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge for all purposes.

1   On April 11, 2012, C&M filed this motion for summary judgment.  Plaintiffs opposed the

2   motion on May 4, 2012.  C&M did not file a reply.

3       The pre-trial and trial dates have been vacated.

4       On June 12, 2012, the Court granted the motion for summary judgment brought by BofA

5   and BAC, and those entities have been dismissed from this action.

6                                **UNDISPUTED FACTS**

7       C&M is a mortgage broker existing under the laws of the State of California.  Exh. F,

8   attached to Motion.  On November 8, 2006, Timothy Darcey, of C&M, submitted a Uniform

9   Residential Loan Application to BofA on Plaintiffs' behalf.  Deposition of Timothy Darcey

10  ("Darcey Dep."), 46:10-14; Exh. G, attached to Motion.  The application stated that the loan was

11  a refinance in the amount of $908,000.  The application further stated that the loan term was 360

12  months and the loan type was an "ARM," "5 YR I/O."  Darcey Dep., 46:10-18; Exh. G.

13      The loan was approved and Plaintiffs executed the Adjustable Rate Note and Deed of

14  Trust on December 2, 2006.  Darcey Dep., 146:20-25; Deposition of Stephen Chohrach ("S.

15  Chohrach Dep."), 58, 67; Exh J, K.  The Adjustable Rate Note indicated that it was a 30 year

16  loan in the amount of $908,000.  The loan included a 5 year 6.5 percent fixed rate that began

17  adjusting once every year in 2012.  Plaintiffs are not required to repay principal for the first 10

18  years and there is no prepayment penalty.  Exh. J.  Plaintiffs received unsigned copies of the

19  documents they signed.  S. Chohrach Dep., 67:7-12.

20      Approximately a day or two after signing the closing documents, Mr. Chohrach went

21  through the documents they received and discovered that the loan was not the 30 year fixed-rate

22  loan that they believed they had obtained.  S. Chohrach Dep., 96:20-97:25; Declaration of Donna

23  Chohrach ("D. Chohrach Decl.,") ¶¶ 3-4.  Mr. Chohrach saw the interest-only term and contacted

24  Mr. Darcey.  S. Chohrach Dep., 96:20-97:25; D. Chohrach Decl., ¶ 4.  Until that time, Plaintiffs

25  believed they had signed a 30 year fixed-rate loan.  S. Chohrach Dep., 78:1-9.

26      On December 6, 2006, Plaintiffs executed a Notice of Right to Cancel for their loan

27  within 3 days (December 9, 2006).  Deposition of Donna Chohrach, 83-84; Exh. Q.     Plaintiffs

28  did not cancel the loan.  D. Chohrach Decl., ¶ 7.

1    This action was filed on September 21, 2010.

2                                    **LEGAL STANDARD**

3         Summary judgment is appropriate when no genuine issue of material fact exists and the

4    moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317

5    (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the

6    court those portions of the material on file that it believes demonstrates the absence of any

7    genuine issues of material fact," the burden of production shifts and "the non moving party must

8    set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a

9    genuine issue for trial.'"  T.W. Electric Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d

10   626, 630 (9th Cir. 1987)(quoting Fed.R.Civ.P. 56(e)).  As to the specific facts offered by the

11   nonmoving party, the court does not weigh conflicting evidence, but draws all inferences in the

12   light most favorable to the nonmoving party.  Id. at 630-31.

13        If the moving party meets its initial responsibility, the burden then shifts to the opposing

14   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

15   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

16        In attempting to establish the existence of this factual dispute, the opposing party may not

17   rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

18   form of affidavits, and/or admissible discovery material, in support of its contention that the

19   dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

20   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

21   suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

22   Elec. Serv.,809 F.2d at 630, and that the dispute is genuine, i.e., the evidence is such that a

23   reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc.,

24   818 F.2d 1433, 1436 (9th Cir. 1987).

25        In the endeavor to establish the existence of a factual dispute, the opposing party need not

26   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

27   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

28   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
*Matsushita, 475 U.S. at 587* (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).  The evidence of the opposing party is to be believed, *Anderson, 477 U.S. at 255*, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita, 475 U.S. at 587* (citing *United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)*.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).*

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita, 475 U.S. at 587* (citation omitted).

## DISCUSSION

A.   RESPA and TILA Claims

C&M contends that the causes of action under TILA (Sixth Cause of Action) and RESPA (Seventh Cause of Action) do not apply to it.  Indeed, both causes of action are stated against BofA and BAC.  In any event, Plaintiffs did not oppose dismissal of these causes of action in opposing the motion for summary judgment brought by BofA and BAC.  The motion was granted on June 12, 2012.

B.   Fraud

Plaintiffs' First and Second Causes of Action are based on the alleged fraudulent actions of Defendants.  As the allegations relate to C&M, Plaintiffs allege that Mr. Darcey falsely stated that they were receiving a 30 year fixed-rate loan, would not need to pay much in closing costs to

obtain the loan, received a 5 year interest-only loan, and that the loan was not much different from a 30 year fixed.[2]

A fraud claim under California law has a three year statute of limitations.  Cal. Civ. Proc. § 338(d).  It is undisputed that Plaintiffs learned that the loan they had received did not match their expectations a day or two after the December 2, 2006, closing.  Nor is it disputed that Plaintiffs executed the Notice of Right to Cancel on December 6, 2006, and did not cancel the loan within the three day time period thereafter.  Plaintiffs filed this action on September 21, 2010, almost four years later.

It is a well-established principle that the statute of limitations on a claim begins to run when the plaintiff "at least suspects a factual basis, as opposed to a legal theory" of some wrongdoing, and has "reason to suspect when he has notice or information of circumstances to put a reasonable person on inquiry."  Norgart v. Upjohn Co., 21 Cal.4th 383, 397–98 (1999) (internal citations and quotations omitted).  The burden is on a plaintiff seeking to avoid the effect of the limitations bar to plead specific facts demonstrating: "(1) the time and manner of discovery [of the facts underlying the claim] and (2) the inability to have made earlier discovery despite reasonable diligence."  E–Fab, Inc. v. Accountants, Inc. Servs., 153 Cal.App.4th 1308, 1324 (2007).

Under California law, one who signs a contract "cannot complain of unfamiliarity with the language of the instrument."  Madden v. Kaiser Foundation Hospitals, 17 Cal.3d 699, 710 (1976);  Pac. State Bank v. Greene, 110 Cal.App.4th 375, 393 (2003).  A party must show he reasonably relied on a contrary representation such that it excuses his failure to read the document.  Pac State Bank, 110 Cal.App.4th at 393.  Where the party was "in full possession of all information relevant to the discovery [of the claim] ... on the day the loan papers were signed," there is no basis for equitable tolling of the limitations period.  Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir.2003).

---

[2] In the motion for summary judgment brought by BofA and BAC, Plaintiffs did not oppose dismissal of the constructive fraud claim.  It is unclear whether Plaintiffs oppose dismissal of the claim against C&M, though the same analysis applies regardless of whether the alleged fraud was actual or constructive.

1    Based on the undisputed facts before the Court, Plaintiffs are not entitled to tolling of the

2    limitations period.  Just days after signing the closing documents on December 2, 2006, Plaintiffs

3    discovered that the loan they received was not the loan they believed they had obtained.

4    Plaintiffs signed the Notice of Right to Cancel on December 6, 2006, but did not cancel by the

5    December 9, 2006, deadline.  Therefore, at the latest, the limitations period began to run a few

6    days after December 2, 2006, when they had notice of the potential wrongdoing.

7    Plaintiffs attempt to toll the limitations period by arguing that they reasonably relied on

8    various statements allegedly made by Mr. Darcey.  According to Plaintiffs, when they discovered

9    the potential problem, they contacted Mr. Darcey, who told them the loan they received was the

10   same as a 30 year fixed and that they could refinance at any time and/or convert the loan.  D.

11   Chohrach Dec., ¶¶ 5-6.

12   As to alleged statements made after their discovery, Plaintiffs have not demonstrated that

13   Mr. Darcey's statement about refinancing was a misrepresentation at the time it was made.

14   While refinancing may not have been available at a later date, there is no evidence that the

15   statement was false when it was made.

16   Moreover, in light of Plaintiffs' undisputed knowledge that they did not receive the loan

17   they thought they had, Plaintiffs have not demonstrated that it was reasonable to rely on Mr.

18   Darcey's alleged statements.  A 30 year fixed-rate loan is not the same as the loan Plaintiffs'

19   received and any statement suggesting otherwise would be untrue, yet Plaintiffs received

20   numerous documents at the December 2, 2006, signing that would have made reliance on such a

21   statement unreasonable.  For example, the Note itself explained that the "Interest-Only Period"

22   would run from the date of the Note through January 1, 2017.  The "Amortization Period" would

23   begin after January 1, 2017, and payments would be calculated based on a new interest rate and

24   would be sufficient to repay the unpaid principle by the Maturity Date.  The Note also indicated

25   that initial monthly payments would be in the amount of $4,918.33.  Exh. J.

26   The schedule of payments sets this out more clearly.  Beginning on February 1, 2007,

27   Plaintiffs would pay $4,918.33 per month for 60 months.  On February 1, 2012, after the fixed

28   interest period, Plaintiffs would continue making interest-only payments in the approximate

1  amount of $5,769.58 for the next 60 months.  After the interest-only portion of the loan ended,

2  Plaintiffs would begin paying approximately $7,384.35 for the remaining 240 months of the loan.

3  Exh. O.  Given this information setting out the variable payments and the significant increase in

4  payments after the first 10 years, Plaintiffs were not reasonable in relying on Mr. Darcey's

5  alleged statement that the loan they received was essentially the same as a 30 year fixed-rate

6  traditional loan.  A 30 year fixed-rate loan would not have an interest-only period, a variable

7  interest rate or an increase in monthly payments.

8       For these reasons, Plaintiffs are not entitled to tolling on their fraud claims.

9  C.    Conspiracy

10      Plaintiffs allege an independent cause of action for conspiracy even though it is simply a

11  theory of joint liability for an underlying tort.  See Applied Equip. Corp. v. Litton Saudi Arabia,

12  Ltd., 7 Cal.4th 503 (1994).

13      Nonetheless, in granting BofA's motion for summary judgment, the Court explained that

14  Plaintiffs offered no evidence to support their conspiracy theory.  Plaintiffs cited

15  "communications" between Mr. Darcey and BofA, but such communications would be expected

16  in a loan transaction.  Plaintiffs' remaining allegations are nothing more than speculative, general

17  claims against the banking industry.  Plaintiffs provide no specific evidence to support the

18  elements of a conspiracy claim.  Rusheen v. Cohen, 37 Cal.4th 1048, 1062 (2006) (elements of a

19  claim of civil conspiracy are (1) formation and operation of the conspiracy and (2) damage

20  resulting to plaintiff (3) from a wrongful act done in furtherance of the common design).

21  D.    Negligence

22      In the Fourth Cause of Action for negligence, Plaintiffs allege that Mr. Darcey and BofA

23  failed to consider the usual underwriting factors for assessing creditworthiness, deceived

24  Plaintiffs as to the true terms of the loan and did not work in Plaintiffs' best interest by

25  convincing them to sign the loan documents without reading the terms.  Complaint, ¶ 95.

26      In California, a negligence claim is subject to a two year statute of limitations.  Cal. Civ.

27  Proc. § 339(1).  Pursuant to the discussion above, all claims related to the loan are time-barred

28  and Plaintiffs are not entitled to tolling.

7

E.      California Bus. & Prof. Code section 17200, et seq.

Plaintiffs allege that "Defendants' acts constitute unlawful, unfair and/or fraudulent business practices." Complaint, at ¶ 101.

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." An act can be alleged to violate any or all of the three prongs. Berryman v. Merit Prop. Mgmt, Inc., 152 Cal.App.4th 1544, 1554 (2007).

Plaintiffs have not established a violation under any of the three prongs. The Court has found that Plaintiffs cannot state a claim for fraud and Plaintiffs have not cited any unlawful act.

To state a claim for "unfair" business practice in a consumer case, plaintiffs must allege conduct that either violates a "legislatively declared policy" or is such that the "utility of the conduct outweighs the gravity of the harm to the alleged victims." Lozano v. AT&T Wireless Serv. Inc., 504 F.3d 718, 733 (9th Cir. 2007). Based on the undisputed facts, which demonstrate that Plaintiffs knew that the terms of the loan they signed were not what they thought before they signed the Notice of Right to Cancel, Plaintiffs cannot show unfair business practices. Plaintiffs signed an "Adjustable Rate Note" that stated they would pay interest only from February 1, 2007, through February 1, 2017. It further stated that the interest rate would be 6.5% until January 1, 2012, when may change yearly thereafter. Exh. J.

There is simply no unlawful, unfair or fraudulent act in the facts of this action and C&M is entitled to summary judgment.

F.      Restitution and Rescission

The Eight Cause of Action alleges that Plaintiffs are entitled to restitution and rescission of the loan and Deeds of Trust. Complaint, ¶ 134.

Under California law, however, restitution and rescission are generally not independent causes of action, but rather "general principle[s] underlying various legal doctrines and remedies." Donahue v. Apple, Inc., 2012 WL 1657119, *16 (N.D.Cal. 2012) (citing McBride v. Boughton, 123 Cal.App.4th 379, 387 (Cal.Ct.App.2004); Soares v. ReconTrust Co., N.A., 2012 WL 1901234, *5 (N.D.Cal. 2012).

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.       GRANTS the motion for summary judgment brought by Defendant C&M McGee, Inc.; and

2.       DIRECTS the clerk to enter judgment in favor of Defendant C&M McGee, Inc., and against Plaintiffs Stephen Chohrach and Donna Chohrach.

This terminates this action in its entirety.

IT IS SO ORDERED.

**Dated:**   **July 16, 2012**          **/s/ Dennis L. Beck**
                                   UNITED STATES MAGISTRATE JUDGE